UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PROTECTMARRIAGE.COM -
YES ON 8, a PROJECT OF
CALIFORNIA RENEWAL,

    Plaintiff,

    v.

COURAGE CAMPAIGN, COURAGE
CAMPAIGN INSTITUTE,

    Defendants.
_____/

NO. CIV. S-10-132 LKK/DAD

O R D E R

    This is a trademark dispute. Plaintiff seeks a temporary restraining order enjoining defendant from using the allegedly infringing mark. For the reasons stated below, the court concludes that plaintiff is unlikely to overcome the conclusion that defendant's use of the mark is protected under the First Amendment, in that the use is relevant to an expressive parody and the use is not explicitly misleading. Plaintiff's motion is therefore denied.

### I. BACKGROUND

    In 2008, the California Electorate passed Proposition 8, which amended the state constitution to provide that "Only marriage

1

between a man and a woman is valid or recognized in California." California Constitution Art. I, § 7.5.  Plaintiff California Renewal is a nonprofit corporation which operates "ProtectMarriage.com - Yes on 8."  Plaintiff helped place Proposition 8 on the ballot, campaigned for Proposition 8's passage, and has since informed the public about challenges to Proposition 8 and raised funds to defend against such challenges. Perhaps most recently, plaintiff has intervened as a defendant in a federal constitutional challenge to Proposition 8 currently being tried in the Northern District of California, Perry v. Schwarzenegger, 09-cv-02292.

In all of the above activities, plaintiff has used a logo it refers to as the "ProtectMarriage Trademark."  This logo depicts four stylized silhouettes: two larger figures, one in pants and one in a dress, standing on either side of two smaller figures, also one in pants and one in a dress.  Thus, the logo represents a heterosexual family.  All four figures have their arms raised. This graphic is often, but not always, presented in blue, under an arcing banner reading "Yes on 8 Protect Marriage."  In this banner, the 8 is centered and in larger type.  Plaintiff submits the following rendition:

////

////

////

////

////



Defendant is a nonprofit organization that supports a right to homosexual marriage. Thus, plaintiff and defendant have opposing views on Proposition 8. When trial in Perry v. Schwarzenegger began on January 11, 2010, defendant began operating a website dedicated to providing coverage of the trial, prop8trialtracker.com. Prop8trialtracker.com uses a logo admittedly derived from the "ProtectMarriage" logo. The prop8trialtracker logo also features four stylized silhouettes. While plaintiff's logo depicts the "parent" figures in pants and a dress, both "parent" figures in defendant's logo wear dresses,  suggesting same-sex parents. The text in the banner in defendant's logo has been replaced to read "Prop 8 Trial Tracker." On January 19, 2010 (the day the TRO was filed), the image appeared on the website as the image to the left.

3

1  Defendant has filed an opposition to plaintiff's motion. The
2 court concludes that no hearing on the matter is necessary, and
3 resolves the motion on the papers.[1]

## II. STANDARD

5  Fed. R. Civ. P. 65 provides authority to issue either
6 preliminary injunctions or temporary restraining orders.
7 Ordinarily, a plaintiff seeking a preliminary injunction must
8 demonstrate that it is "[1] likely to succeed on the merits, [2]
9 that he is likely to suffer irreparable harm in the absence of
10 preliminary relief, [3] that the balance of equities tips in his
11 favor, and [4] that an injunction is in the public interest." Am.
12 Trucking Ass'ns v. City of Los Angeles, 559 F.3d 1046, 1052 (9th
13 Cir. 2009) (quoting Winter v. Natural Res. Def. Council, 129 S. Ct.
14 365, 374 (2008)). The requirements for a temporary restraining
15 order are largely the same. Stuhlbarg Int'l Sales Co. v. John D.
16 Brush & Co., 240 F.3d 832, 839 (9th Cir. 2001); see also Wright and
17 Miller, 11A Fed. Prac. & Proc. Civ. § 2951 (2d ed.).

18  In the trademark context, however, the likelihood of success
19 on the merits largely determines the remaining factors. The Ninth
20 Circuit has held that in trademark cases, "irreparable injury may
21 be presumed from a showing of likelihood of success on the merits."
22 Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d
23 873, 877 (9th Cir. 2009) (quotations omitted). This presumption
24 in turn influences the balancing of hardships. Id. Finally,

---

[1] Because the court denies the request for a TRO, the court does not address whether venue is proper in this district.

4

"avoiding confusion to consumers," the goal of trademark protection, is itself a public interest that is often demonstrated by likelihood of success. <u>Internet Specialties West, Inc. v. Milon-Digiorgio Enters.</u>, 559 F.3d 985, 993 (9th Cir. 2009). Both <u>Marlyn Nutraceuticals</u> and <u>Internet Specialties West</u> were decided subsequent to <u>Winter</u>, and cited <u>Winter</u> in their analysis. Accordingly, the court's analysis is limited to the first <u>Winter</u> factor.

### III. ANALYSIS

Plaintiff's complaint alleges claims under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and under California unfair competition and common law trademark infringement. Plaintiff's motion for a temporary restraining order refers only the to Lanham Act trademark claim.

"Trademark law aims to protect trademark owners from a false perception that they are associated with or endorse a product." <u>Mattel Inc. v. Walking Mt. Prods.</u>, 353 F.3d 792, 806 (9th Cir. 2003). The traditional elements of a claim for trademark infringement are ownership of a protectable mark and likelihood of confusion arising from defendant's use of the mark.[2] <u>Applied Info. Scis. Corp. v. eBay, Inc.</u>, 511 F.3d 966, 969 (9th Cir. 2007). In this case, the mark is protectable in that it is suggestive and

---

[2] Plaintiff's claim is "traditional" in this regard, in that the alleged harm is likelihood of confusion. Trademark law also protects against other types of harm, such as dilution even when there is no likelihood of confusion. Plaintiff has not alleged such harm in the instant motion.

5

thus inherently distinctive. Id. at 970. While the mark is unregistered, registration is not a prerequisite to suit. Two Pesos v. Taco Cabana, 505 U.S. 763, 768 (1992). Plaintiff's prior public use of the mark indicates plaintiff's ownership thereof. Sengoku Works v. RMC Int'l, 96 F.3d 1217, 1219 (9th Cir. 1996).

The second element of a claim for infringement is the likelihood of confusion as to the source, sponsorship, or approval of the allegedly infringing product. Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1405 (9th Cir. 1997). One way to negate the element of confusion is to show that the allegedly infringing mark is a parody of the original mark, and that this parody is unlikely to show confusion.[3] Id. The Ninth Circuit has explained that for this reason, parody is not technically a defense to a trademark infringement claim. Id., see also Hard Rock Cafe Licensing Corp. v. Pacific Graphics, Inc., 776 F. Supp. 1454, 1462 (W.D. Wash. 1991); but see E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc., 547 F.3d 1095, 1099 (9th Cir. 2008) (implicitly treating parody as a defense).

The Ninth Circuit cases on the issue concern "artistic" parodies of trademarks. Rock Star Videos, 547 F.3d at 1099, Walking Mt. Prods., 353 F.3d at 807, Mattel, Inc. v. MCA Records, 296 F.3d 894, 900 (9th Cir. 2002). Under a test borrowed from the

---

[3] In this regard, the Lanham Act is unlike the Copyright Act. The Copyright Act includes a specific statutory provision defining "fair use" as non-infringing, 17 U.S.C. § 107, and this statutory provision protects parody. Campbell v. Acuff-Rose Music, 510 U.S. 569 (1994).

1  Second Circuit, an artistic work's use of a mark does not violate
2  the Lanham Act unless the use "has no artistic relevance to the
3  underlying work whatsoever" or the use "explicitly misleads as to
4  the source or the content of the work."  Walking Mt. Prods., 353
5  F.3d at 807 (quoting Rogers v. Grimaldi, 875 F.2d 994, 999 (2d Cir.
6  1989)).  The Ninth Circuit has taken "no relevance" literally.
7  Rock Star Videos, 547 F.3d at 1100.  Thus, a video game's use of
8  a strip club's trademark logo was entitled to First Amendment
9  protection even though the video game was not primarily "about" the
10 club, and was instead "about," at most, the club's neighborhood.
11 Id.
12      In this case, the logo itself is artistic.  Moreover, the
13 broader website, while perhaps not artistic, is undeniably
14 expressive of a political idea, and both political and artistic
15 expression are protected by the First Amendment.  Rock Star Videos,
16 547 F.3d at 1099 (parody defense rooted in the First Amendment).
17 Defendant's use of the mark has relevance to the expressive
18 message, namely, support for homosexual marriages, and
19 specifically, opposition to recent California efforts to limit the
20 right to such marriages.  This support is expressed by the
21 modification of the "father" figure in the original mark to depict
22 a second "mother."  Further, the mark does not explicitly mislead
23 as to the source of the work.  Any potential for confusion or
24 misdirection is obviated by the images and text that uniformly
25 accompany defendant's use of the mark, namely, photos of homosexual
26 couples together with text explicitly endorsing homosexual

7

marriage.  C.f. Rogers, 875 F.2d at 999-1000 (discussing circumstances that might constitute explicit misdirection). Plaintiff is unlikely to succeed in showing that a visitor to the prop8trialtracker website is likely to be confused as to whether plaintiff is affiliated with the site.  Rock Star Videos, 547 F.3d at 1100.

The court further notes that the four parody cases relied upon by plaintiff all concerned cases in which a protected mark was used to sell a product.  Hard Rock Cafe Licensing Corp. v. Pacific Graphics, Inc., 776 F. Supp. 1454 (W.D. Wash. 1991) ("Hard Rain Cafe" t-shirts), Nabisco Brands, Inc. v. Kaye, 760 F. Supp. 25 (D. Conn. 1991) ("A.2" steak sauce), Mutual of Omaha Ins. Co. v. Novak, 648 F. Supp. 905, 907 (D. Neb. 1986) ("mutant of Omaha" shirts and other items), Gucci Shops, Inc. v. R. H. Macy & Co., 446 F. Supp. 838 (S.D.N.Y. 1977) ("Gucchi Goo" diaper bags).  Plaintiff provides no indication of similar economic activity here.

When use of a trademark is a protected parody under the Rogers rule, further analysis of the trademark infringement is unnecessary.  Rock Star Videos, 547 F.3d at 1098, 1101. Alternatively, even if Rogers does not apply to this case, it appears that the text and images that uniformly accompany defendant's use of the mark are sufficient to dispel any possible consumer confusion.  For these reasons, plaintiff is unlikely to succeed on the merits of its trademark infringement claim.

## IV. CONCLUSION

For the reasons stated above, plaintiff's motion for a

8

1 temporary restraining order is DENIED.
2     IT IS SO ORDERED.
3     DATED: January 20, 2010.

/s/ Lawrence K. Karlton
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT